(C. D. 1364)

CHANTICLEER PRESS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

■■■■■■■■■■■■

■■■■■■■

(Decided September 5, 1951)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Arthur R. Martoccia,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Plaintiff imported several thousand copies of a book composed in essence of some 60 photographic reproductions of the works of Oskar Kokoschka, a contemporary European artist, together with an introduction by James S. Plaut, and a letter from the artist. The collector of customs at the port of New York classified said merchandise as books of other than *bona fide* foreign authorship, and assessed duty thereon at the rate of 10 per centum ad valorem pursuant to the provisions of paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. In the two protests filed against such classification and assessment of duty, the claim is made that the books are of *bona fide* foreign authorship and, therefore, that the proper rate of duty, as provided in said paragraph 1410, as modified by said trade agreement, was 5 per centum ad valorem.

It is thus apparent that the sole question here to be decided is whether or not the involved books are of *bona fide* foreign authorship. A sample of the importation is before us as plaintiff's exhibit 1. The title page of said exhibit bears the following inscription:

OSKAR
KOKOSCHKA

FORTY-EIGHT PLATES IN PHOTOGRAVURE
EIGHT PLATES IN COLOR
WITH TWO ORIGINAL LITHOGRAPHS
EDITED
AND WITH AN INTRODUCTION
BY JAMES S. PLAUT
AND A LETTER FROM THE ARTIST

THE INSTITUTE OF CONTEMPORARY ART
BOSTON
CHANTICLEER PRESS
NEW YORK

In addition to the contents enumerated upon the title page, the book also contains four other reproduced representations of the artist, an editor's note signed with the initials J. S. P., a list of major exhibitions, a list of selected bibliography, and an index to illustrations.

It is the contention of plaintiff herein that the involved books were the idea and creation of one Walter Neurath, a British subject; that said James S. Plaut, concededly an American citizen, was merely an employee who executed the concept for him, and wrote the introduction; and that inasmuch as Neurath contributed a substantial part of the book, under the principle enunciated in the case of *Oxford University Press, N. Y., Inc.* v. *United States*, 33 C. C. P. A. (Customs) 11, C. A. D. 309, he was the author thereof.

In that case, the court was concerned with the question of who was the author of an anthology of English verse, as a preliminary to the ultimate determination of whether said anthology was or was not of *bona fide* foreign authorship. It had there been established that one Sir Arthur Quiller-Couch, a subject of Great Britain, had prepared and produced the manuscript of the book. In so doing, he had extensively surveyed the field of all English and American poetry composed over a period of about 700 years, selected those poems which he had desired to include in his anthology, arranged them in accordance with a preconceived plan, written the prefaces, indices, glossaries, and other explanatory portions of the book, and had edited and excised the selected poems wherever he deemed it necessary. In other words, he had exerted a considerable mental effort, not alone in conceiving the idea for the anthology, but in bringing that idea to fruition.

It further appeared that the finished anthology contained 1,141 pages of the poems of some 300 foreign authors and 10 American authors, the poems of the latter covering 28 pages or 2.45 per centum of the whole.

On the basis of that record, this court had held (12 Cust. Ct. 216, C. D. 857) that the entire compilation and its arrangement were susceptible of authorship; that the authorship thereof lay in the original poets, as co-authors, rather than in the anthologist; and, the contribution of the American poets being substantial, that the work was not wholly or substantially wholly of *bona fide* foreign authorship.

In reversing the decision of this court, the Court of Customs and Patent Appeals held that the American and English poets were not co-authors, since co-authorship presupposes a joint endeavor of contemporaries, which, of course, could not be the case with poets whose works covered a period of some 700 years. Therefore, the fact that 2.45 per centum of the completed volume was devoted to American poetry was of no moment. The court considered further that since in the production of the completed work, the anthologist expended "much intellectual labor" and applied "rare literary skill," he was the author of the book in question.

In evident reliance upon the apparent analogy between a collection of verse and a compilation of paintings, plaintiff sought to estab-

lish at the trial of this case that the sole author of the book at bar was the person who originally conceived the idea for its production and that, he being an Englishman, the book was of *bona fide* foreign authorship.

Accordingly, testimony was introduced to the effect that the idea for the creation of the instant book was that of the said Walter Neurath, a director of Adprint, Ltd., the English exporter of the books; that the book was produced in conjunction with a projected exhibition in the United States of the paintings of Oskar Kokoschka, an artist of considerable repute in Europe, but little known in the United States; that Mr. Neurath came to this country to interest Mr. J. S. Plaut of the Institute of Contemporary Art in Boston, an American, in the production of the book; that Mr. Plaut agreed to the plan and also to the writing of an introduction; that one Paul Steiner, manager and secretary of Chanticleer Press, Inc., American publisher of the book, assisted Neurath in arranging to obtain photographs of those of Kokoschka's paintings which were owned by Americans, and continued to collect and coordinate all the material for the book, including Plaut's introduction which he transmitted to England after Neurath left this country; that Mr. Neurath was the "inspiring genius" behind the production of the book which was really his conception; that Neurath would ordinarily be known as the editor of the book but that Plaut gets most of the credit; and that Plaut wrote at least 19 of the 39 printed pages and possibly more.

Under the doctrine of the *Oxford University Press* case, *supra*, we are required to adopt a broad construction of the word "authorship" in connection with its use in paragraph 1410 of the Tariff Act of 1930, *supra*. We doubt, however, whether that broad construction would encompass a factual situation in which the alleged author merely conceived the idea for the literary work, initiated the project, and selected and assembled the material to be included. To constitute authorship, something in the nature of an overt expression of the author's literary efforts in the finished production would seem to be necessary, especially in view of the following statement in the court's decision in that case:

In arriving at the foregoing conclusion, it has not been necessary for us, in considering the meaning of the terms "author" or "authorship," to go so far as to adopt as broad a meaning as the courts have done with reference to the constitutional provision relating to the "Writings" of "Authors"; nor is it necessary for us here to decide, and we do not decide, that a mere compilation by a foreigner would meet the requirements of the tariff law. The instant volume is obviously much more than a compilation. It is not difficult to conceive of a mechanical putting together of a great number of writings by others which would involve no intellectual effort whatever. Just where the dividing line should be drawn we need not here determine.

Moreover, although the record contains the asseverations of plaintiff's witness that the foreign personality referred to by him was

the "inspiring genius" behind the book; that the book was really his conception; and that he was the sole motivating cause for its coming into being in its final and completed form, there are certain statements and acknowledgments in the book itself which controvert this testimony and rob it of any probative force or effect.

For example, on page 6 of plaintiff's exhibit 1, we find, under the caption "EDITOR's NOTE," which is signed with the initials J. S. P., the following:

> We are grateful to Mr. Kokoschka for his friendly aid and counsel, and to the following for their invaluable assistance in the preparation of this volume:
>
> *in New York*, Mr. Curt Valentin, Dr. Otto Kallir, Dr. Hugo Feigl, Mr. Paul Drey and Mr. Paul Steiner.
>
> *in London*, Mr. J. P. Hodin, Miss Edith Hoffmann, whose recent biography *Kokoschka, Life and Work* (Faber and Faber, London, 1947) has provided us with vital source material; Mr. Walter Neurath, and Miss Grete Ring;
>
> \*  \*  \*  \*  \*  \*  \*
>
> Finally, we wish to express our sincere thanks to the many individuals and institutions whose generosity in making Kokoschka's works available for reproduction has been unfailing. His friends in Europe and the United States have had consistent sympathy for the project and have shown us every kindness.

The artist himself, in his letter to Mr. Plaut, who, on the frontispiece is described as the editor, states:

> It is very kind of you to invite me to write a few words which can be used as a preface to the catalogue of the first representative exhibition of my paintings to be held in your country.
>
> First of all, let me sincerely thank you for taking the initiative in this exhibition, and for devoting your time and energy to the task of making American art-lovers acquainted with what is more or less my life's work. Up to now, owing to two world wars, it has been practically inaccessible to them.

It is extremely unlikely that one who is in fact the author of a literary composition would in the volume presented for public perusal suffer himself to be mentioned solely as one who had rendered "invaluable assistance in the preparation of this volume," and then be compelled to rely upon extraneous evidence to prove the contrary. It is rather to be assumed that some more significant open acknowledgment of his authorship would appear in the book he had caused to be produced. Nor do we think that the artist would have expressed himself in the manner in which he did, had Neurath been, in fact and in deed, the author of this book.

We hold the evidence of record to be insufficient to establish that the said Neurath, or any other person of foreign nationality, was the author of the books at bar, and for that reason, that the presumption of correctness of the collector's classification has not been overcome. The claim in the protests is therefore overruled.

Judgment will be entered accordingly.